## CHARLES PITT and WILLIAM PITT *vs.* ERASTUS DAVISON, impleaded with WILLIAM DAVISON.

Where a party seeks, not to review a decision made at a special term, on the merits, but to have it set aside or revoked, on the ground of irregularity, his remedy is not by *appeal* to *reverse* the order, but by *motion* to *set it aside* for irregularity, or to declare it void as a nullity. BARNARD, J. dissented.

On proceedings against a party as for a contempt, by an order to show cause, personal service of the order to show cause, or personal appearance in court

---

Pitt *v.* Davison.

---

in compliance with its terms, is indispensable.    Service of the order upon the *attorney* of the party is not sufficient.

If the party cannot be served with an order to show cause, the proper course is to apply for an attachment against him, to compel his attendance before the court, and if necessary, for *alias* and *pluries* writs.

In proceedings for contempts, the directions of the statute must be strictly pursued.

The order to show cause should be that the party show cause why he should not be punished for the alleged misconduct; succinctly and plainly specifying the nature of the application ; not that the parties shall appear and show cause " why an *attachment* should not be issued against them, and they be punished for the alleged contempt and misconduct."

Whenever a party appears on an order to show cause, or when he is brought before the court on an attachment, for a contempt, *interrogatories* must, in all cases except those specified in the statute, be filed, before the party can be condemned.

The exceptions are, where the misconduct has been committed in the presence of the court, and where the party has disobeyed a subpœna, or a rule or order for the payment of money.

An attorney or solicitor is only authorized to appear and act for his client in the proceedings which constitute a part of the action.   He has no authority to appear for the party in other proceedings, not forming essentially a part of the action ; particularly when they partake of a criminal character, and involve his liberty.

The proceeding relative to a contempt is a new proceeding, requiring new authority to the attorney.

On proceedings for a contempt, the personal appearance of the party in court, either voluntarily or by compulsion, before he can be proceeded against and condemned, is indispensable.   Without such appearance, the court has no jurisdiction of the person.

THIS was an appeal from an order made at a special term discharging the defendant Erastus Davison from arrest. Judgment was rendered in this action on the 7th of May, 1856, on the report of a referee, requiring the defendants specifically to perform their contract with the plaintiffs to convey to them a house and lot in Twenty-sixth street in the city of New York, and for which the plaintiffs had principally paid.   This judgment was never appealed from.   A certified copy of the judgment was personally served on the defendants, with a summons to attend before the referee, Mr. Cambreling, to carry   into effect the decree for executing the

Pitt v. Davison.

conveyance. On the 27th of June, 1856, the parties attended before the referee. The plaintiffs, with their counsel, offered to perform what was required of them in the decree, and requested the defendants, who were present, and also represented by their counsel, to perform their part of the decree. As an excuse for non-performance the defendants set forth matter, in their affidavits, showing their inability to comply. The referee overruled their excuses, and they then refused to comply. On the 30th of June, 1856, the referee made a special report to the court of what transpired before him on the 27th of June, annexing the defendants' affidavits thereto. On that report, and on the judgment roll, Justice Davies, on the 9th of December, 1857, granted an order for the defendants to show cause, on the 19th of that month, why they should not be attached as for a contempt in disobeying the decree. The plaintiffs' attorney tried for seven months to get the papers served on the defendants personally, but they having absented themselves from the state to avoid service of process, the judge, on proof of that fact, ordered the papers prepared for the motion to show cause to be served on their attorney. After the papers were so served, an adjournment was procured by the defendants' attorney, to enable him to communicate with his clients, which he did. He was instructed by Erastus Davison to defend the motion. That motion was subsequently heard before Justice Davies, who overruled the objection that the papers were not personally served on the defendants. And on the 30th of December, 1857, he made an order adjudging the defendants to be guilty of a contempt, and for the commitment of the defendants until they should comply with the decree and convey the premises in controversy, or the court should otherwise order. *No appeal was taken from this adjudication.* The defendants kept out of the way for nearly three years, until, early in November, 1860, Erastus Davison was arrested under a mittimus issued in pursuance of that order, and committed to Eldridge street prison, where he still remained.

Pitt v. Davison.

After his arrest Erastus Davison made a motion, before Justice BARNARD, to be relieved from the decree and his imprisonment, on the ground of his inability to comply with the decree and order. On the 9th of January, 1861, Justice BARNARD denied the application, with costs. This order was not appealed from. A habeas corpus was then sued out, returnable before the Hon. J. H. McCunn, city judge, to which return was made of the mittimus, and that the defendant was held under it. The city judge, upon a hearing of the parties upon such return, dismissed the writ, and remanded the defendant. On the 5th of August, 1861, another motion to discharge Erastus Davison from arrest was made before Justice INGRAHAM, who, considering that he could not hear and determine the motion on account of the former decision of Justice BARNARD, denied the same, with $10 costs, but with leave to renew the application. The defendant, on the 19th of August, 1861, without paying the costs, renewed the motion before Justice SUTHERLAND, who, on the 9th of October, 1861, made an order, by which the motion to discharge the defendant was denied, but without costs, and with leave to him to move to change and modify the judgment and all subsequent proceedings, and at the same time to move also for the defendant's discharge. (See 12 Abb. Pr. Rep. 386.) From so much of this order as denied the discharge, the defendant appealed.

J. V. Loomis and J. R. Whiting, for the appellant.
I. The order granted by Justice Davies, on the 9th of December, 1857, for the defendants to show cause why they should not be punished for an alleged contempt and misconduct, was never served on the defendant Erastus Davison.

II. In that order it was directed that the same be served on the attorney of the defendants.

III. Erastus Davison was not notified, nor did he know of the application for or the granting of said order to show cause, nor of any proceedings under or in pursuance of it,

Pitt v. Davison.

until after the allowance of the attachment or order dated December 30, under and in pursuance of which he was and is imprisoned.

IV. He was never, at any time, either voluntarily or by process of this court, before or in the presence of the court from and after the granting of said order of imprisonment, nor until after he was imprisoned.

V. The defendant was so imprisoned without having been personally brought before the court, and without having appeared before it in any manner, and without any hearing as to the alleged contempt.

VI. The court did not, before such commitment and imprisonment, cause interrogatories to be filed, specifying the facts and circumstances alleged against the defendant. The defendant did not have an opportunity to, and did not, answer any such interrogatories under oath, by the direction of the court or otherwise.

VII. The defendant was and is imprisoned for the omission to perform an act or acts which it was not and is not in his power to perform; and is ordered to be so imprisoned until he performs such act or acts.

VIII. The defendant was and is so imprisoned without ever having been adjudged to be in contempt by this court.

*D. McMahon* and *Nelson Chase*, for the respondents. I. The judgment entered in this action, after a trial, was for a specific performance, and required from the defendants a conveyance by good and satisfactory title in fee simple, discharged from all liens and incumbrances, of a house and lot in Twenty-sixth street in the city of New York. It also required from the defendant Erastus Davison a discharge of a mortgage executed by him to George W. Strong, on the premises in controversy, after the making of the contract sought to be specifically enforced. (1.) The power to enforce such a judgment, by the supreme court, in equity, is given, 1st. By the practice and decisions of the court of chancery. (*Lud-*

*low* v. *Lansing, Hopk.* 231.) 2d. By the revised statutes. (2 *R. S.* 355, § 5, *5th ed. ; Id.* 768, 535, § 1, *sub.* 3, 8, *4th ed.*) 3d. By the *code*, (§ 285,) which provides that where the judgment requires the performance of any other act than the delivery of the possession of real or personal property or the payment of money, (which is this case, because the judgment here requires the specific performance of a contract,) after a certified copy of the judgment has been served on the defendant and he requested to comply, the court may punish him for a contempt. (2.) The judgment was not appealed from, and was enrolled, and over five years have expired, from the time of its entry. It is too late, now, for the defendants to urge against that judgment that it should not have been made. (*Higbie* v. *Edgarton,* 3 *Paige,* 253.)

II. The steps taken by the plaintiffs to procure a performance of the decree by the defendants of the acts required in the judgment have been regular, and the defendant cannot be discharged from imprisonment. (1.) By section 285 of the code, all that is required, to bring a party into contempt, is to serve a certified copy of the judgment, personally, on the defendant. The code seems to provide for no other mode of personal service. All the subsequent proceedings, after such a personal service, we submit, may be by the usual orders and notices served on the defendants' attorneys. (2.) The statute as to contempts does not require, imperatively, that written interrogatories shall be put. An order to show cause is enough. (*Watson* v. *Fitzsimmons,* 5 *Duer,* 629.) A court of chancery might always commit on affidavits, without first putting interrogatories. (*Yates' case,* 9 *John.* 395, *reversing Yates* v. *The People,* 6 *id.* 337, *and affirming the Yates case,* 4 *id.* 317.) So the court of chancery has, where a defendant has designedly kept out of the way, declared that the proper mode of service to bring him into contempt is on his attorneys, instead of being on himself personally. (*Albany City Bank* v. *Schermerhorn,* 9 *Paige,* 372.)

III. It was not proper to attempt to review the order of

Pitt v. Davison.

Justice Davies, granted on the 30th of December, 1857, in this collateral way, before Justice Sutherland. (1.) The order of Justice Davies was within the province of a court of equity to make, in order to carry its decree into force. The only proper way to review that exercise of power was by an appeal therefrom. (2.) It was not necessary that the defendant should have been personally served with notice of the proceedings to punish him as for a contempt. The statute on contempts contemplates two modes of procedure. 1st. By preliminary arrest and putting interrogatories to him. 2d. By order to show cause, in which case the personal attendance of the party is not required. (*Albany City Bank* v. *Schermerhorn*, 9 *Paige*, 372.) The latter course was here adopted. When it appeared before the court that the defendants were willfully absenting themselves from the state, the court directed the service to be made on the attorney. This the court could do. See concluding part of Justice Sutherland's opinion; also *Watson* v. *Fitzsimmons*, (5 *Duer*, 629;) *Case of Yates*, (4 *John. Rep.* 317;) *Yates* v. *Lansing*, (9 *id.* 395.) (3.) This objection, as appears by the affidavit of Mr. Chase, must have been taken, on the 30th of December, 1857, by the defendants' counsel, and was overruled by Justice Davies. It is therefore *res adjudicata* in this case, and cannot be disturbed, even if the learned judge erred. (*Higbie* v. *Edgarton*, 3 *Paige*, 253.) In the latter case it was held that it is no objection to an attachment that the party should not have had the order, originally. (4.) There is a manifest distinction between criminal contempts and conviction of a contempt in a proceeding to enforce a civil remedy. (*See Lansing* v. *Easton*, 7 *Paige*, 364.) (5.) The jurisdiction of this court at special term, at the time Justice Davies made his order, must be presumed; it being a court of general jurisdiction. In commitments for contempt, where the imprisonment is intended as a punishment for the offense, the commitment should specify some definite time. But where it is designed to compel obedience

to an order of court, it should only be for so long as the contumacy continues. (*Goff's case*, 3 *M. & Sel.* 203. 4 *Burr.* 382. *Hurd*, 415.) If this objection was not taken, by Mr. Bowne, it is now waived by the neglect to do so. It appears by the recital in the order that he attended there, and opposed the motion.

IV. The excuses set up as a reason why the defendant did not comply with the decree, are inadmissible, now, to relieve the defendant from his contempt. (1.) The facts were complete before the judgment and before the referee's report upon the issues in the cause. The foreclosure suit was commenced November 14, 1854, and the sale was made June 23, 1855. The referee's report is dated November 9, 1855, and was filed November 17. The judgment was entered May 7, 1856. The defendants having omitted to make this defense in the action, to prevent the judgment, cannot make it to frustrate the judgment by preventing its execution. (2.) The code (§ 274) says the judgment may determine the ultimate rights of the parties. The only remedy to set aside the report of a referee on the merits is by appeal to the general term. Here no appeal was taken. (*Code*, § 348. *Watson* v. *Scriven*, 7 *How. Pr. Rep.* 9. *White* v. *Merritt*, 3 *Seld.* 352.) (3.) Any such excuses could have been set up by the defendants before judgment, if there was any validity in them, by leave of the court, on supplemental answer; which was not done, here. (*Code*, § 177.) Those excuses were not set up before the referee, and before Justice Davies who made the order of December 30, 1857, and were by them overruled. No appeal was taken from that decision. The defendants have now, after five years, lost their opportunity to review this judgment in any other mode than by bill of review. The code only gives the opportunity to correct a judgment by motion within one year.

V. The tender by the defendant of the quit-claim deed was not a compliance with the decree. By that decree the property was to be conveyed free from all liens and incum-

Pitt v. Davison.

brances. The affidavit of William Pitt shows that, in July, 1855, the defendant Erastus Davison quit-claimed that house to one Henry S. Thorpe. His present quit-claim would therefore give no title to the plaintiffs to the premises in controversy, and would not be a compliance with the judgment. His inability to convey the premises is no excuse; for that excuse was set up before the referee, on the 27th of June, 1856, and was by him overruled, and his decision was affirmed by Justice Davies, on the 30th of December, 1857. It is therefore *res adjudicata*, and cannot be urged on this motion.

VI. The denial of the motion by Justice Barnard in January, 1861, which was made for the discharge of the defendant, was conclusive, also, it not having been appealed from. (1.) The motion to be relieved from arrest, on the ground of inability, implied necessarily that the imprisonment was regular, and that there were no grounds of irregularity about it. (2.) The order denying that motion, not having been appealed from, is conclusive upon the question. A party is bound in the first instance to set up his objections of irregularities, before he moves on the merits, (*Willet* v. *Fayerweather*, 1 *Barb. S. C. Rep.* 72,) or to obtain leave to renew on irregularities. (*Bellinger* v. *Martindale*, 8 *How. Pr. Rep.* 113.)

VII. The defendant Erastus Davison is entitled to no favor at the hands of the court. (1.) The referee decided that he was not a *bona fide* purchaser. (2.) By his and his co-defendant's acts the plaintiffs have been kept out of their money, now over $12,000, for about thirteen years. (3.) He evaded the order and judgment of the court by keeping out of the state over three years, and now comes in and makes this motion, not showing any disposition to indemnify the plaintiffs for their loss. A party cannot object that the injunction or other order which he has disobeyed was erroneously granted. He is guilty of contempt, unless the order or injunction is void upon its face from an utter want of juris-

diction. (*People* v. *Sturtevant*, 9 *N. Y. Rep.* 263. *S. C.*, 1 *Duer*, 451, 512. *Higbie* v. *Edgarton*, 3 *Paige*, 253. *Smith* v. *Reno*, 6 *How. Pr. Rep.* 124. *Arctic Fire Ins. Co.* v. *Hicks*, 7 *Abb.* 204.)

VIII. The defendant is not without remedy to be relieved from his present imprisonment. It is this: 1st. To comply with the course pointed out by Justice Sutherland in his opinion. 2d. To move, under the act of 1843, (*Laws of* 1843, *p.* 8,) to be relieved from imprisonment, on the ground of his utter inability to comply with the decree.

IX. The affidavit and calculation of William Pitt show that the plaintiffs, by the contempt of the defendants, have sustained a loss of about $12,000. The defendant Erastus Davison cannot therefore be discharged without making restitution to the plaintiffs, or indemnifying them. (*Lansing* v. *Easton*, 7 *Paige*, 364.)

X. Justice Sutherland might have denied the motion on the ground that the defendant below had not paid the motion costs required to be paid, by Justice Ingraham, on giving him leave to renew.

CLERKE, P. J.  I. The objection has been made, that the proper course for the defendant in this case was to appeal from the order of commitment, and, having neglected to do so within the time allowed, that he is now without remedy. But this motion was not made for the purpose of reviewing the decision of the special term on the merits, but for the purpose of setting it aside, or revoking it on the ground of irregularity. The question before us is not whether the defendant was really guilty of the contempt with which he was charged, but whether the proceeding, under which he was condemned, was in conformity with the rules and practice which the law prescribes for the convenient administration of justice or for the security of the citizen. In other words, we are asked, not to consider the matter upon which the commitment was ordered, but the manner in which it was con-

ducted; precisely as when a judgment is recovered without a summons issued against a defendant, or when a trial is had without notice, the remedy is not by appeal to reverse it, but by motion to set it aside for irregularity, or to declare it void as a nullity.

The question, therefore, for our consideration, on this motion, is not whether the defendant E. Davison, on whose behalf it is made, was guilty of a contempt in disobeying the order of the court, but whether the proceedings under which he was found guilty were such as the law interposes for the purpose of protecting every citizen in the enjoyment of his personal liberty until he has an opportunity of being heard in his defense.

The provisions of the revised statutes relative to contempts are chiefly a summary of the common law upon that subject.

The provisions and principles of both take especial care that the alleged offender shall have personal notice of the proceedings; that he shall be brought in person before the court; and that interrogatories shall be propounded, to which he shall have an ample opportunity of filing answers. Those proceedings are not a constituent part of the actions in which he may be a party, but constitute a *quasi* criminal prosecution against him for an alleged offense not only against his adversary but against the interests of justice and the majesty of the law. In short, it partakes both of the nature of a private injury and a public crime.

Undoubtedly, in *Yates* v. *Lansing*, (9 *John.* 418,) Senator Platt states that the chancellor had a right to dispense with the examination by interrogatories if, in his judgment, the proof by affidavits was sufficient in itself, and of such credit as that a denial by the party accused, under oath, would not countervail the affidavits. Whether this is sufficiently supported by authority and principle, or not, it is scarcely applicable to the present case. It was in fact a dictum. In *Yates* v. *Lansing* the commitment by the chancellor did not come before the supreme court on review, but incidentally, in an

action against the chancellor of the state to recover the penalty of $1250 under the 5th section of the habeas corpus act, (1 *R. L.* 355,) declaring that no person, who shall be set at large upon any *habeas corpus,* shall be again imprisoned for the same offense, &c., and that " if any person shall knowingly recommit or imprison any person so set at large, he shall forfeit to the party aggrieved $1250." The court, therefore, in that case, had no right to inquire, nor was it necessary that they should inquire, into the proceedings in chancery prior to the conviction. The court saw on the face of the return an adjudication or conviction for a contempt, and a commitment in pursuance of such conviction. They were not bound to inquire by what means the court of chancery arrived at the adjudication; they could only act judicially upon the facts appearing on the return. But the case before us is an appeal from an order made on an application to set aside the commitment against E. Davison, for irregularity; and the alleged grounds of that irregularity are, that the order to show cause was not personally served on the defendant; that in terms the order was defective; and that he could not, even if he was properly before the court, be committed until interrogatories were filed, and he should have an opportunity of answering them.

I think the personal service of the order to show cause, or personal appearance in court in compliance with it, is indispensable. Otherwise a citizen may be deprived of one of his dearest rights—that of personal liberty—without being heard, or even without being aware that his liberty was threatened. I am aware that in *The Albany City Bank* v. *Schermerhorn,* (9 *Paige,* 374,) the chancellor says : " Where the party proceeds by an order to show cause, copies of the order &c. must be served on him *or his solicitor ;* and if the party accused does not appear on the day appointed, the court may at once proceed to make a final decision, that the accused has been guilty of the contempt charged." . In that case interrogatories and answers were filed, and the question whether

Pitt *v.* Davison.

the service of the order to show cause on the solicitor alone was sufficient, was not distinctly presented; and the chancellor, in making the statement referred to, gave, by way of introduction to the question before him, what he considered a resumè of the revised statutes, upon the mode of bringing a party before the court for alleged contempt. The 5th section of title 13, chapter 8, part 3d, says the court shall either grant an order on the accused party to show cause why he should not be punished, for the alleged misconduct, or shall issue an attachment to arrest the party. It says nothing of the mode of serving the order to show cause. Nor does it provide that the service shall be a substituted one. Are we then to presume, in a matter in which personal liberty is concerned, where a person is accused of an offense which may be punished by incarceration in a prison for an indefinite time, that the legislature intended a mode of service might be adopted, by which a citizen may be subjected to this punishment without being heard? The presumption is quite the other way. The presumption clearly is that it was never intended to change the well settled principles of the common law and of *magna charta,* which emphatically declare that no man shall be condemned unheard. But there is a provision in another chapter of part 3d, article 1, title 2, also relating to contempts, section 10, which expressly says, "contempts committed in the immediate view and presence of the court may be punished summarily; in other cases the party charged shall be notified of his accusation, and have a reasonable time to make his defense." Is it a sufficient compliance with this provision, that the service of the order to show cause may be on the attorney or solicitor for the party in the action? The attorney or solicitor is only authorized to appear and act for the party in all the proceedings which constitute a part of the action. He has no more authority to appear for the party in other proceedings, not forming essentially a part of the action, particularly when they partake of a criminal character and involve his liberty, than he would

have authority to appear to answer or plead guilty to an indictment against his client for an assault and battery committed by him on his adversary in consequence of some dispute relative to the questions at issue in the civil action. The proceeding relative to the contempt is a new proceeding, requiring new authority, if indeed the personal appearance of the party can be at all dispensed with. The proper course to pursue, if the party cannot be served with an order to show cause, is to apply for an attachment against the party for the purpose of compelling his attendance before the court, which, like the order to show cause, is a preliminary process ; if the sheriff cannot *find him, alias* and *pluries* attachments may be issued against him ; and if these are not available, in consequence of the absence, concealment or absconding of the party, the court has done all it could do, and justice fails, as it unfortunately does fail, in many other instances.

II. The proceedings are defective even if the substituted service were permissible. In proceedings of this nature, the directions of the statute must be strictly pursued. The order to show cause, allowed by the statute, is to show cause why the party should not be punished for the alleged misconduct ; succinctly and plainly specifying the nature of the application. The order in this case cites the defendants to appear and show cause "why an *attachment* should not be issued against them, and they be punished for the alleged contempt and misconduct." This may very easily be understood by the defendant as meaning that an attachment would be applied for as preliminary to proceedings for the punishment of the alleged misconduct ; and he might justly have conceived — as the statute provides when a party is brought before the court upon an attachment, that interrogatories shall be filed against him, to which he would have the right of making written answers on oath — that if he even neglected to appear on that order to show cause he would, when brought before the court on the attachment, have an opportunity of

being heard and presenting sufficient excuses for not complying with the decree.

III. Could the filing of interrogatories be dispensed with, even if the order to show cause was correct on its face, and properly served ?

There are very few exceptions to this mode of procedure, in the books; and those exceptions are confined to cases where the party admits the misconduct, in open court, or where, if he denied it, the denial of the facts would nevertheless leave him guilty of the offense. But I doubt whether under any circumstances, except in the cases specified in the statute, interrogatories can now be dispensed with. Those exceptions are where the misconduct has been committed in the presence of the court, and where the party has disobeyed a subpœna or a rule or order for the payment of money. The 19th section of the act provides "when any defendant arrested upon an attachment shall have been brought into court, or shall have appeared therein, the court shall cause interrogatories to be filed, requiring his answers thereto." Now considering that the almost invariable practice under the common law was to file interrogatories and require answers, before the party could be finally sentenced, and that this right is as essential to justice and liberty when he appears on an order to show cause, or in any other way, as where he is brought before the court on an attachment, it is safe to suppose that in all cases, except those expressly specified, the legislature intended that interrogatories should be filed before the party could be condemned. At all events the statute does not, where the proceeding is by an order to show cause, expressly dispense with this ancient, constitutional and well established mode of procedure, designed for the protection of the personal liberty of citizens,

IV, Were it not for the importance of the subject, it would have been scarcely necessary to refer to the foregoing objections; because there is one objection remaining, which, if all the others were untenable, would be undoubtedly fatal, and

that is that the court had no jurisdiction of the person. The defendant E. Davison was never before the court, in this matter. As I have already said, it is a new proceeding; and the personal appearance of the party, before he can be proceeded against, and condemned, is as essential as if he was tried, convicted and sentenced for the crime of grand larceny. Among the indispensable requirements for acquiring jurisdiction of the person, in a proceeding for contempt, is the presence of the defendant in court, either voluntarily or by compulsion, under process of attachment. The necessity of this is so obvious that it seems scarcely necessary to refer to authority; but to save the necessity of quoting a list of cases upon the subject, it will be sufficient to refer to *The People* v. *Nevins*, (1 *Hill*, 158.)

The order of commitment, I think, should be set aside as irregular, and the defendant E. Davison be discharged from imprisonment.

SUTHERLAND, J. I concur in the conclusion to which Mr. Justice CLERKE has arrived, but mainly on the second point or ground stated in his opinion; that is, that the form of the order to show cause was *why an attachment* should not issue, &c.

BARNARD, J. dissented. The order of January, 1861, was final. It should have been appealed from.

Order set aside.(<em>a</em>)

[NEW YORK GENERAL TERM, September 16, 1861. *Clerke, Sutherland* and *Barnard*, Justices.]

(*a*) The decree as finally settled, contained a clause declaring that it was made upon condition that the defendant should bring no action against any person or persons for damages by reason of his arrest or imprisonment.